Good morning. May it please the Court, Elizabeth Krushak on behalf of Appellant Jasper Williams. I'd like to reserve two minutes of my time for rebuttal. The District Court erred in this case in ordering Mr. Williams to be forcibly medicated pursuant to United States v. Sell because the government did not set forth clear and convincing evidence that its interests in prosecuting Mr. Williams in this case were important or that those interests would be furthered by forced medication. First, the strong possibility of a lengthy civil commitment here seriously lessens the government's interest in prosecution. And second, the government did not present clear and convincing evidence that Haldol was substantially likely to restore Mr. Williams to competence or that it was substantially unlikely to result in serious side effects that would significantly interfere with his ability to assert himself. So let me ask you this. Is it the – is it – is your concern with the medical testimony that was presented or with the district court's findings? We do not believe that the testimony that was presented was clear and convincing evidence. Well, in your judgment, then, other than just sort of, you know, mentioning what we identified, what is missing from the medical evidence that was presented? If you look at the record, with respect to whether Haldol is substantially likely to restore Mr. Williams to competency, the evidence in the record shows that Mr. Williams was actually found incompetent when he was taking Haldol and benzotropine by Dr. Cady, who evaluated him in August 2010. And so I guess to get back to your original question, our position is that the district court erred in determining that, given that evidence. He's the fellow who's a doctor of education, I think. That is correct. And I think the other doctors said, well, we just think the amount he was being given and the dosage, and he was okay for a while, he sort of peaked and then started drifting off at the end, et cetera, we still think that Haldol will work. And so you're sort of comparing Cady to these other folks, and the district judge had that in front of them. Well, I think what is significant about Dr. Cady is that he is the only individual who had firsthand knowledge of Haldol's effect on Mr. Williams. Dr. Cady is a licensed psychologist. He's qualified to opine as to competency. And I think given his actual observations of the effect of the medication on Mr. Williams, the Court did not properly consider that. Dr. Lucking is a psychiatrist, and he was opining as to the potential effects of Haldol, but the only firsthand evidence we have shows that it was not working. Well, didn't they say that he was getting an awful lot from Dr. Cady? Dr. Lucking did indicate that the dosage was higher than what they considered, but what we don't know is how the medication is going to affect Mr. Williams. The only evidence that we have in the record is that not only did it not restore his competency, because Dr. Cady actually found him incompetent while he was taking the medication, but that it also resulted in sedation, which is a serious concern regarding Mr. Williams' ability to assist his counsel. I thought, just as Judge Fernandez suggested a minute ago, I thought the evidence showed that they could give him a smaller dosage that would alleviate some of the sedation. Well, it's true that they could give him a smaller dosage. We don't know whether or not that would entirely eliminate the sedative effect. Well, they can't be absolutely certain, can they? They can't be absolutely certain. I mean, it takes a period of time for these drugs to work, doesn't it? That is true, but I think the fact that Mr. Williams has been seen sedated is a serious concern that's going to affect his ability to communicate with counsel. It's going to affect the way that he presents himself to a jury. But you're saying it's a slam dunk. That's the point. You're not saying, all right, well, these guys go back and they're going to give him a lot less. You're saying, well, maybe it will have the same effect and maybe it won't. And you say, but as long as Dr. Cady did it once and gave him a high dosage and although he was okay for a while, it then sort of sedated him, as long as that happened, that's the end. The judge can't consider anything else, really. That seems to be what you're suggesting, and that's the difficulty that Judge Paez asked in the first place. Are you complaining about the evidence or are you complaining about what the judge decided? I'm complaining about what the judge decided in terms of, I think, the evidence in the record. I think the district court clearly erred in not considering more significantly the firsthand observations of Dr. Cady. And I do think it's significant that Dr. Lucking did talk about potentially lessening the sedative effects of Haldol and benzotropine by giving a lower dose. But he wasn't actually able to address why Mr. Williams still suffered from internal confusion and confused thinking. So he was not able to actually explain how the medication would deal with a competency issue. And so I think the government has failed and the district court has erred on both of the prongs of the second part of SELL, which is there's not clear and convincing evidence in the record that the medication is substantially likely to restore Mr. Williams to competency, nor is there evidence that their side effects are substantially unlikely to interfere with representation. And I would note there are other side effects other than just sedation. Well, didn't Cady say, we gave him this up, he was in a normal mood, controlled verbal actions, emotional expression, consistent, topics being discussed, all was wonderful for a while, for about, what did they say, about 30 minutes. And then he got sedated, he got sedated after that. So he didn't say that Haldol had no good effects on him. He said it did have a good effect for a while. And then he lapsed into this other problem. Isn't that what he said? That is true. So if he had a smaller dosage, perhaps the good mood, et cetera, et cetera, would stay. And that's what the other doctors are saying, it sounds like. But I think the concern is that over the period of a trial, the evidence that the court had in front of it was that Haldol may not be effective for a long period of time. Counsel, let me ask you this. Let's say that we disagree with you in terms of the four self-factors being satisfied. Do you think that there were adequate – there was adequate evidence presented that Haldol is the best – is in the best medical interest of the defendant, that particular drug as opposed to some other drug? I don't, Your Honor, because we have – the only evidence that we have of Haldol is, I suppose, at best equivocal, and I would say there's evidence that it didn't work. And while Mr. Williams has been restored to competency before, he's never been restored to competency on this particular drug. And so at this point, it's, you know, pure speculation as to whether or not Haldol itself would work. So do you think the district court made a specific finding that Haldol was in his best medical interest? It did, but I would argue that the district court clearly erred in making that determination. I thought all the district court did at the end was just to balance all the factors and conclude that the balance tipped in favor of the government. Well, I think the government is required to provide clear and convincing evidence of each factor, Your Honor. It's not a balance. Isn't the district court supposed to make specific findings on each of the factors? Yes. Rather than balance the factors? Correct, Your Honor. And so our position is that the district court erred in finding that the second factor and the first factor were met. Well, okay. Do you want to save some time for rebuttal? I do, Your Honor. You have a minute and a half, basically. Good morning. Joan Rufinoff, District of Arizona, on behalf of the United States. The district court did not clearly err in finding that the final three cell factors were satisfied by the evidence presented by the district to the district court by Dr. Lucking. Could you tell me where in the district court's findings he made a specific finding that Haldol was in the best interest, best medical interest of the defendant? The district court noted the experience of Dr. Cady after observing the administration of Haldol and its positive effects, as well as the previous medication used to restore the defendant's competency on Ziprazidone or Risperidol. And I don't understand that to be the finding that's required by Zell. Well, the court noted it, and the court also found that I'm looking for it. But that's not a finding, that Haldol was in his best medical interest. The court also made a finding, and I'm looking for it in here, that the treatment is medically appropriate because it's the standard treatment. That just means that this issue's the standard treatment. That issue wasn't raised on appeal, though, was it? It wasn't raised on it, not specifically. And the thing is, the district court had before it the testimony. Well, he's challenging the findings, correct? I mean, he's just challenging the determination. He made a general – he made – well, frankly, I wasn't sure exactly what he was challenging, because he simply said the district court was wrong. So he didn't make a specific challenge to the lack of proof on any of the Zell factors. And the government's position is there is sufficient proof on all of the Zell factors. And then the district court made a very careful consideration of all the evidence that was presented before it. The only witness to testify was Dr. Lucking. And Dr. Lucking – You know, the issues presented on appeal, though, are is it likely to render him competent to stand trial? Is forced medication unlikely to have side effects that will interfere with the trial? And are important governmental interests at stake? They didn't raise any other issue except those three on appeal that I can see. Now, you say you're confused. Maybe they did raise the other issue you're saying? I was confused because of the way that they were argued. I – Right. I mean, the way they are – I noted what the judge – when I looked at their brief, I mean, I noticed what the issues were on appeal. But when you read their – when you read it, it looks to me like they're challenging the ultimate determination of the district court. And the question of whether or not the – and whether the district court complied with what – with our – not the – with our subsequent cases following Zell. I forget the name of the one off the top of my head. It's not on the top of my head. It's – Ruiz-Gaxiola. Judge Reinhardt's opinion. Yes. Ruiz-Gaxiola. Ruiz-Gaxiola. Right. The Ninth Circuit case. And I'm sorry, was – did the – No, I'm just – I'm sorry. I got confused. I mean, I guess one could say that they didn't specifically raise the issue. I mean, that they should have raised whether or not the district court made a proper finding. But I understood them to be challenging the ultimate determination, which in my view, that encompasses the – what the district court was required to do. Well, if you look at the record and what the district court had before it, the challenge before the district court was that the government didn't have a significant interest in this case because the defense believed that the possibility of civil confinement undermines the government's interest in the prosecution. And so the testimony – while there was testimony on each of the four elements of SELL, the focus of the arguments and the court's ultimate findings, while he – I believe that he touched on all of them, but he focused primarily on the, is civil confinement, is that something that's going to undermine the government's interest, and will the medication likely make him, render him competent. And I believe that the court in the totality considered everything. If the court didn't make a specific finding, it's because it's implicit in the evidence. What would be the consequences if we were to reverse the district court's finding here, the order here? Just go back for another determination, correct? I guess it would, because there's already been the Harper hearing. There's already been the civil commitment hearing. So if you remand it back, it would depend on what – how you remand it back. If you say that there was insufficient evidence, then I suppose we could go through another hearing and have the district court make the same – or make explicit its finding that the medication is in his best interest. Because the testimony was that the defendant is psychotic, that he's not – his primary malady is his inability to think logically and consistently, and to be able to carry on a logical, reasonable conversation. And that in all the experiences of his treatment with antipsychotic medication, that he has improved. When he was in the state, it was Geodone, which is an oral medication that he took – that he took orally, and he became competent. When he was initially treated with the Haldol, it was a significantly higher dose, 20 milligrams a day, as opposed to the approximately 5 milligrams a day that the district court has allowed in this case under its order. Let me just stop you there. So where does Dr. Lucking testify that Haldol, that specific drug, is in the defendant's best medical interest, as opposed to one of the other two second-generation drugs that the defendant had previously received? What the district – or, I'm sorry, what – you want to know what Dr. – where Dr. Lucking testified? He's the only – that's the only evidence you've got. Right. Right. And Dr. Lucking testified? Let me – let me just focus you on my concern. Dr. Lucking testifies that as a general matter, the second-generation drugs have one-fifth to one-tenth side effect, the negative side effect profile as Haldol, right? Correct. And he testifies that Haldol and second-generation drugs are equally effective in accomplishing the purpose that you – you like the – the drugs to be administered for. So how – I don't understand. On that record, how do you – how do we conclude that the district court was right in saying that Haldol, as opposed to one of the second-generation drugs, is in the defendant's best medical interest? Because of all the medications that are available, only three of them are available for injectable, long-term treatment. So of those three, two are – are first-generation. And then there's the Risperidol, which is the second-generation. And the court found that because – or the court had evidence before it, and I believe that its finding was implicit, that because Haldol had worked for the defendant It had not. But The other one had. Well, the other one. I'm Risperidol. The defendant had previously received Risperidol, and it had been proved Am I wrong on that? Prazodone, which is Geodone. No, he had received both. And so you're talking about not the 2008 State restoration. You're talking about when he was injuring himself in May of 2011 in the cell? I'm not sure which incident, but there were – he got two different second-generation drugs. And I – as I understand it, there was testimony that both of them proved effective when he was taking them. He was given – the Geodone that he was given, Geodone-Prazodone, was 2008. That's an oral medication. So that can't be used to restore him long-term because he's not willing to take it. He was also given – okay, here we go. The Risperidone is the second generation, but Dr. Lucking testified that given the potential side effects that he had worked with Haldol and that in his experience Haldol worked well and had minimal side effects at the dosages that he prescribed. He testified, though, that just as a general matter, Haldol has a far worse side effect profile than any of the second-generation drugs. As a general matter, but he testified that in his personal experience, and the Court has to recognize that he has been – he has 28 years as a psychiatrist, 15 years in BOP, treating particularly these kind of individuals that come for restoration. And in his experience, he has not had anywhere near the side effects that are reported in the studies that have been done. And so in his personal experience, with the dosages that he prescribed and titrates according to the individual, he does not have those side effects. And he would say that in his experience they are significantly lower. And the District Court, in hearing that evidence, did not clearly err in finding that the first generation would work for the defendant, particularly in light of the fact that Dr. Cady observed the defendant on Haldol, find that he in fact did improve during the first 30 minutes of that interview after receiving a dosage that's considerably higher – oh, I see I'm over my time – considerably higher than what is proposed in the order. And I submit that based on the testimony that was presented, the District Court did not clearly err, and therefore, this Court should not substitute its judgment for that of the District Court. Roberts. Thank you. I appreciate your argument. Given that the District Court did not specifically find that Haldol itself or that there wasn't testimony that Haldol itself clearly would restore Mr. Williams to competency, and given that Dr. Cady saw serious side effects resulting from Haldol and actually saw that Mr. Williams' condition deteriorated over time on Haldol, the District Court clearly erred in finding that the second cell factor was satisfied in this case. And although we haven't discussed it very much, I also argue that the District Court erred in finding that the first cell factor was satisfied because there is in fact in this case a strong possibility of a lengthy civil commitment that does seriously lessen the government's interest in prosecuting this case. So given overall that two of the cell factors were not satisfied, we're asking that this Court reverse and So is it your contention that the fourth cell factor was satisfied? We did not challenge the third or fourth cell factors, Your Honor, in our brief. Okay. Is that the way you'd like us to look at the case? Well, Your Honor, I think overall the District Court erred in finding that forced medication was appropriate. Okay. Thank you. Thank you, Counsel. The matter is submitted.
judges: Fernandez, Paez, Watford